IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| DIVYA GUPTA | : | CIVIL ACTION |
| | : | |
| v. | : | NO. 10-4418 |
| | : | |
| FIRST JUDICIAL DISTRICT OF PA. | : | |

**MEMORANDUM RE: MOTION TO DISMISS OR ALTERNATIVELY FOR SUMMARY JUDGMENT**

**Baylson, J.**                                                                                                         December 23, 2010

## I. Introduction

Plaintiff, Divya Gupta, brings this employment discrimination action against the First Judicial District of Pennsylvania ("Defendant") for violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000(e) et seq., as amended by the Civil Rights Act of 1991, 42 U.S.C. § 1981(a) ("Title VII"). Currently before the Court is Defendant's Motion to Dismiss And/Or For Summary Judgment As To Plaintiff's Complaint, pursuant to Federal Rules of Civil Procedure 12(b)(1), 12(b)(6), and 56. (ECF No. 5). For the following reasons, the motion is DENIED with respect to dismissal pursuant to Rules 12(b)(1) and 12(b)(6), and is GRANTED with respect to summary judgment.

## II. Factual and Procedural Background

Plaintiff, a 28-year-old female, alleges that on or about February 24, 2009, she applied for employment as a law clerk for the Honorable Ann M. Butchart ("Judge Butchart") of the Pennsylvania Court of Common Pleas, and was invited to interview the following day. Compl. ¶¶ 6, 10. At the interview, Judge Butchart's former law clerk, Albertine DuFrayne ("DuFrayne"),

explained the duties of the position and told Plaintiff that the job was "very flexible."  Compl. ¶ 11.  Judge Butchart inquired about Plaintiff's relevant work experience.  Compl. ¶ 12.  Judge Butchart explained the clerk's duties, which included legal research, writing judicial opinions, occasionally assisting Judge Butchart in court, and occasionally answering phone calls for Judge Butchart.  Compl. ¶ 13.  On or about February 26, 2009, Dufrayne contacted Plaintiff and offered her the clerkship.  Compl. ¶ 14.  Plaintiff accepted the job offer and began work on March 3, 2009.  Compl. ¶ 14.

Two days after starting work, on or about March 5, 2009, Plaintiff disclosed to Judge Butchart that she was pregnant.  Compl. ¶¶ 14-15.  Plaintiff alleges that Judge Butchart stated that a former law clerk took medical leave due to pregnancy complications, that she did not have "good luck with this," and that she "should only hire lesbians or men."  Compl. ¶ 15.  Plaintiff alleges that she responded that her pregnancy would not interfere with her job and that her maternity leave would be brief.  Compl. ¶ 16.  Plaintiff alleges that Defendant's Human Resources representative informed Plaintiff of her right to use sick days, paid vacation, flex time, and unpaid leave for her maternity leave.  Compl. ¶ 17.  Plaintiff alleges that on March 26, 2009, in a meeting at which Defendant's Employment and Labor Relations Counsel was present, Judge Butchart terminated Plaintiff's employment, giving her a termination letter that said Judge Butchart told Plaintiff at her interview that the new clerk would assume the secretary's duties from August to November 2009, during the secretary's scheduled maternity leave, and that Plaintiff agreed to assume both positions.  Compl. ¶ 18.  Plaintiff alleges that she was neither told that she was expected to assume the secretary's role prior to receiving this letter nor trained to perform the secretary's duties.  Compl. ¶ 19.  Plaintiff alleges that Judge Butchart replaced her by

2

hiring a non-pregnant individual. Compl. ¶ 20.

Plaintiff pursued her administrative remedies, received a right to sue notice, and timely filed this action. Compl. ¶ 4. Plaintiff alleges that her employment was terminated solely because of her sex/pregnancy. Compl. ¶ 21. Plaintiff seeks compensation for lost wages and benefits, front pay, compensatory damages for future pecuniary losses, pain, suffering, inconvenience, mental anguish, loss of enjoyment of life, pre- and post-judgment interest, costs, attorney fees, and expert witness fees. Compl. ¶ 26.

Defendant filed its motion to dismiss the complaint, or alternatively for summary judgment, on September 27, 2010. Plaintiff responded and filed an accompanying affidavit on October 8, 2010 (ECF No. 7), and Defendant replied on October 15, 2010 (ECF No. 8). The Court held oral argument on the motion on December 16, 2010.

### III. The Parties' Contentions

Defendant's prime contention is that Plaintiff is not protected under Title VII because, as a law clerk to an elected judge, she met the "personal staff" exemption to the definition of an "employee." Def.'s Mot. Dismiss 2. Plaintiff refutes the "personal staff" categorization with an affidavit regarding conditions of her employment, including: her paychecks were not signed by Judge Butchart; her employee identification card was issued by the City of Philadelphia; she was subject to the Defendant's personnel policies; she was instructed by Judge Butchart to discuss her maternity leave options with the Human Resources Department for the Defendant; she did not represent Judge Butchart in the eyes of the public, at public meetings, or in open court; she did not participate in negotiations or conferences; she did not hold a position high within the chain of command; and she did not have supervisory authority. Affidavit of Divya Gupta ("Gupta Aff.")

¶¶ 2-7, Oct. 8, 2010.  Furthermore, Plaintiff asserts that she "did not have an intimate working relationship with Judge Butchart," met with Judge Butchart infrequently, and did not draft any judicial opinions.  Gupta Aff. at ¶ 8.

IV.     **Standards of Review**

    A.     **Motion to Dismiss for Lack of Subject Matter Jurisdiction (Fed. R. Civ. P. 12(b)(1))**

When evaluating whether a federal court has subject matter jurisdiction over a cause of action pursuant to Rule 12(b)(1), the plaintiff bears the burden of persuading the Court that subject matter jurisdiction exists.  Kehr Packages, Inc. v. Fidelcor, Inc., 926 F.2d 1406, 1409 (3d Cir. 1991).  In determining whether subject matter jurisdiction exists, "the trial court is free to weigh the evidence and satisfy itself as to the existence of its power to hear the case."  Mortensen v. First Fed. Sav. & Loan Ass'n, 549 F.2d 884, 891 (3d Cir. 1977).  Moreover, "no presumptive truthfulness attaches to plaintiff's allegations, and the existence of disputed material facts will not preclude the trial court from evaluating for itself the merits of jurisdictional claims."  Id.

    B.     **Motion to Dismiss for Failure to State a Claim (Fed. R. Civ. P. 12(b)(6))**

When deciding a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6), the Court may look only to the facts alleged in the complaint and its attachments.  Jordan v. Fox, Rothschild, O'Brien & Frankel, 20 F.3d 1250, 1261 (3d Cir. 1994).  The Court must accept as true all well-pleaded allegations in the complaint and view them in the light most favorable to the plaintiff.  Angelastro v. Prudential-Bache Sec., Inc., 764 F.2d 939, 944 (3d Cir. 1985).  The motion will be granted only when it is certain that no relief could be granted under any set of facts that plaintiff could prove.  Ransom v. Marrazzo, 848 F.2d 398, 401 (3d Cir. 1988).  A valid

complaint requires only "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). To state a valid complaint, a plaintiff must provide sufficient factual allegations to "satisfy the requirement that he or she provide not only 'fair notice,' but also the 'grounds' on which the claim rests." Phillips v. Cnty. of Allegheny, 515 F.3d 224, 233 (3d Cir. 2008) (citing Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 n.3 (2007)). Accordingly, to survive a motion to dismiss, a plaintiff must plead "factual content [that] allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Ashcroft v. Iqbal, 129 S.Ct. 1937, 1949 (2009) (citing Twombly, 550 U.S. at 556). When the district court considers matters outside the pleadings, such as an affidavit filed in opposition to a pending motion to dismiss, the court is required to convert the pending motion to dismiss into a motion for summary judgment. Rose v. Bartle, 871 F.2d 331, 340 (3d Cir. 1989); Fed. R. Civ. P. 12(d).

### C. Motion for Summary Judgment (Fed. R. Civ. P. 56)

Summary judgment is appropriate "only when the record 'shows that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law.'" Giles v. Kearney, 571 F.3d 318, 322 (3d Cir. 2009) (quoting Fed. R. Civ. P. 56(c)).[1] The Court must find there is a genuine issue of material fact "if evidence exists from which a rational

---

[1] Amendments to the Federal Rules Of Civil Procedure became effective on December 1, 2010. The oft-cited summary judgment standard formerly found in Rule 56(c) is now located in Rule 56(a), with one alteration: "The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a) (emphasis added). The Rules Advisory Committee explained that the substitution of "dispute" for "issue" better describes the summary judgment inquiry, but does not affect the substantive standard or the applicability of prior decisions construing the standard. Fed. R. Civ. P. 56 advisory committee's note.

person could conclude that the position of the person with the burden of proof on the disputed issue is correct." Clark v. Modern Grp., 9 F.3d 321, 326 (3d Cir. 1993) (citing Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986)). The movant bears the burden of "'informing the district court of the basis for its motion, and identifying those portions of the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, which it believes demonstrate the absence of a genuine issue of material fact.'" El v. SEPTA , 479 F.3d 232, 237 (3d Cir. 2007) (quoting Celotex, 477 U.S. at 323). If the moving party meets its burden, then the non-movant must set forth specific facts such that a reasonable jury could find in its favor. Betts v. New Castle Youth Dev. Ctr., 621 F.3d 249, 252 (3d Cir. 2010) (citing Fed. R. Civ. P. 56(e)(2)). On a motion for summary judgment, the court considers the evidence in the light most favorable to the non-moving party. Hugh v. Butler Cnty. Family YMCA, 418 F.3d 265, 267 (3d Cir. 2005).

## VI. Discussion

### A. Jurisdiction

This Court has jurisdiction over Plaintiff's Title VII claim pursuant to 28 U.S.C. § 1331 because it arises under the laws of the United States, and 42 U.S.C. § 2000e-5(f)(3), which empowers federal courts to adjudicate civil actions brought under Title VII. Defendant challenges the Court's exercise of jurisdiction by contending that whether Plaintiff satisfies the Title VII definition of "employee" in 42 U.S.C. § 2000e(f) is a threshold jurisdictional issue.

The Supreme Court has held that fulfilling the definitional requirements of Title VII is a question of the merits rather than of jurisdiction. In Arbaugh v. Y & H Corp., 546 U.S. 500 (2006), the Supreme Court found that the district court erred by dismissing the plaintiff's Title

6

VII claim where, after the jury had returned a verdict for the plaintiff, the defendant employer objected to subject matter jurisdiction on the basis that it did not satisfy the statutory definition of an "employer." Id. at 504. The Court held that the employee-numerosity requirement in the "employer" definition "relate[d] to the substantive adequacy of [plaintiff's] Title VII claim," and was not a "determinant of subject-matter jurisdiction." Id. The Supreme Court set forth a bright-line rule that "when Congress does not rank a statutory limitation on coverage as jurisdictional, courts should treat the restriction as nonjurisdictional in character." Id. at 516.

Although the Third Circuit has not ruled on whether meeting the requirements of Title VII's definition of an "employee" is nonjurisdictional, other courts have applied the rule of Arbaugh and concluded that whether a plaintiff has proper "employee" status is a substantive ingredient of the claim. See, e.g., Townsend v. Shook, 323 F. App'x 245, 250 (4th Cir. 2009) (nonprecedential); Xie v. Univ. of Utah, 243 F. App'x 367, 371 (10th Cir. 2007) (nonprecedential); Levin v. Madigan, 697 F. Supp. 2d 958, 963 (N.D. Ill. 2010); Kirleis v. Dickie, McCamey & Chilcote, P.C., No. 06cv1495, 2009 WL 3602008, at *5 n.11 (W.D. Pa. Oct. 28, 2009). This Court agrees that whether Plaintiff is an "employee" under Title VII is not an issue of subject matter jurisdiction. Accordingly, the Court denies Defendant's motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(1).

**B.     The Personal Staff Exemption**

Title VII protects employees against discrimination in the workplace on the basis of protected characteristics, including sex and pregnancy. 42 U.S.C.A. §§ 2000e-2(a)(1), 2000e(k). To be entitled to the protections of Title VII, a plaintiff must show that she is a covered

"employee,"[2] defined as follows:

> The term "employee" means an individual employed by an employer, except that the term "employee" shall not include any person elected to public office in any State or political subdivision of any State by the qualified voters thereof, or any person chosen by such officer to be on such officer's personal staff, or an appointee on the policy making level or an immediate adviser with respect to the exercise of the constitutional or legal powers of the office. The exemption set forth in the preceding sentence shall not include employees subject to the civil service laws of a State government, governmental agency or political subdivision...

42 U.S.C.A. § 2000e(f).[3] Congress intended that these exemptions be narrowly construed. Teneyuca v. Bexar Cnty., 767 F.2d 148, 152 (5th Cir. 1985) (citing Owens v. Rush, 654 F.2d 1370, 1372 (10th Cir. 1981)); S. Comm. on Labor and Pub. Welfare, Legislative History of Equal Employment Opportunity Act of 1972, at 1814 (1972) ("It is the conferees intent that this exemption shall be construed narrowly.").

Only the "personal staff" exemption is relevant to this case.[4] Because the statute does not

---

[2] In a Title VII case alleging employment discrimination, the plaintiff must prove by a preponderance of the evidence a prima facie case of discrimination. If the plaintiff does so, the burden shifts to the defendant to show a legitimate, non-discriminatory reason for dismissing the employee. If the defendant meets its burden, then the plaintiff must prove by a preponderance of the evidence that the reasons offered by the defendant were pretextual. Glass v. Philadelphia Elec. Co., 34 F.3d 188, 194 (3d Cir. 1994) (citing Texas Dep't of Cmty. Affairs v. Burdine, 450 U.S. 248, 252-53 (1981)). A plaintiff establishes a prima facie case of discrimination by showing that she is a member of a protected class who was qualified for the disputed position, was dismissed from the position, and was replaced by someone who did not share that protected characteristic. Kachmar v. SunGard Data Sys., 109 F.3d 173, 182 (3d Cir. 1997).

[3] The parties do not dispute that Plaintiff was not subject to the Civil Service Act, 71 Pa. Cons. Stat. Ann. § 741.3 (West 2010).

[4] Plaintiff's affidavit raises facts regarding her lack of policy-making and supervisory responsibilities, which are relevant to determining whether she satisfies the "policy-making appointee" exemption to the "employee" definition in Title VII. See Gupta Aff. ¶ 7. However, the Defendant does not contend that Plaintiff satisfies this exemption.

clearly define who is a member of an elected official's "personal staff," the Court looks to the nature of Plaintiff's job duties and her relationship to her employer.

The Third Circuit has not set forth standards for evaluating whether an employee falls within the personal staff exemption. Both parties rely on the six-factor analysis of the personal staff exemption set forth in Teneyuca v. Bexar County, 767 F.2d 148 (5th Cir. 1985), which has been widely applied, including by district courts within the Third Circuit.[5] "The Teneyuca factors are still recognized as the leading statement of the law regarding the personal staff exemption." See Conley v. City of Erie, 521 F. Supp. 2d 448, 453 (W.D. Pa. 2007). These factors are:

> (1) whether the elected official has plenary powers of appointment and removal,
> (2) whether the person in the position at issue is personally accountable to only that elected official,
> (3) whether the person in the position at issue represents the elected official in the eyes of the public,
> (4) whether the elected official exercises a considerable amount of control over the position,
> (5) the level of the position within the organization's chain of command, and
> (6) the actual intimacy of the working relationship between the elected official and the person filling the position.

Teneyuca, 767 F.2d at 151. Although federal law governs whether Plaintiff meets the Title VII definition of an employee, the Court may consider state law in applying these factors. Conley, 521 F. Supp. 2d at 452 (citing Costenbader-Jacobson v. Pennsylvania, 227 F. Supp. 2d 304, 309 (M.D. Pa. 2002)).

---

[5] The factors enumerated by the Fifth Circuit in Teneyuca have been applied in other Circuits. See, e.g., Kelley v. City of Albuquerque, 542 F.3d 802, 808 (10th Cir. 2008); Birch v. Cuyahoga Cnty. Prob. Ct., 392 F.3d 151, 158 (6th Cir. 2004); Bland v. New York, 263 F. Supp. 2d 526, 539 (E.D.N.Y. 2003).

The analysis of the Teneyuca factors is "flexible" and of a "highly factual nature," with the objective of determining whether the employee held "an intimate and sensitive position of trust." Id. at 453; Teneyuca, 767 F.2d at 152. The Congressional intent underlying the "personal staff" exception was to "'exempt from coverage those who are chosen by . . . the elected official . . . , and who are in a close personal relationship and an immediate relationship with him.'" Teneyuca, 767 F.2d at 152 (quoting 118 Cong. Rec. 4492-93 (1972)). In Teneyuca, the Fifth Circuit affirmed summary judgment for the defendants on the plaintiff's claim of sex discrimination, where the plaintiff alleged that she applied for and was denied the position of assistant county criminal district attorney, but failed to show any genuine issue of material fact as to whether the position was "personal staff" to the elected county district attorney. Id. at 152-53.

This Court applies the Teneyuca factors in evaluating Defendant's motion. Because the Court looks beyond the pleadings to the affidavit filed by Plaintiff, the Court treats the motion as one for summary judgment. See Fed. R. Civ. P. 12(d). At oral argument, the Court inquired about each of the factors and gave the parties an opportunity to highlight any disputed questions of fact. The Court will review the evidence in the light most favorable to Plaintiff, and finds no disputed facts. Defendant has not requested discovery. As discussed below, the Court finds there are no genuine disputes as to any material fact in this case.

First, Pennsylvania law establishes that Judge Butchart is an elected official who exercises the power of appointment and removal over Plaintiff's position as a law clerk. Pennsylvania law provides for the election of judicial officials, including Judges. Pa. Const. Art. 5 § 13; 42 Pa. Cons. Stat. Ann. § 3131 (West 2010). Judges "may appoint and fix the duties of necessary personal staff," who include "[p]rivate secretaries, law clerks and such other personnel

as an individual may be authorized by law to select and remove. . ..." 42 Pa. Cons. Stat. Ann. §§ 102, 2301(a)(1). Pennsylvania judges also have the "necessary corollary" powers to supervise and discharge their appointed staff. Cnty. of Lehigh v. Pa. Labor Relations Bd., 489 A.2d 1325, 1327 (Pa. 1985) (citing Commonwealth ex rel. Bradley v. Pa. Labor Relations Bd., 388 A.2d 736, 738 (Pa. 1978)).

Second, Plaintiff was personally accountable to Judge Butchart. In Bland v. New York, 263 F. Supp. 2d 526 (E.D.N.Y. 2003), a senior secretary employed by a state judge contended that she was not "personal staff" because the State of New York paid her salary and she was subject to state employment policies. Id. at 537. The court found that the secretary was nevertheless personally accountable to the judge because "virtually all other aspects of her employment (including job responsibilities, performance evaluation, tenure, and discipline) were determined by" the judge, she "was chosen by [the judge] to be his secretary," she "worked in chambers with him exclusively and on a one to one basis," the judge "was listed as the 'appointing authority' on the papers relating to her employment, which he also signed," her job was to "provide personal and confidential legal secretarial services," and the judge had full control over recruitment of his law clerks and secretaries. Id. at 537. The court explained that as a matter of policy, requiring personal staff to be paid by the elected official himself would obliterate the exemption, because in practice "any elected official's personal staff member, chosen by that official, serving at his pleasure, whose salary and employment nonetheless ultimately stemmed from a governmental authority could fall outside the exemption regardless of the intimacy of the working relationship." Id. at 543-44. Similarly, staff attorneys who perform work of a "highly sensitive and confidential nature" and "are answerable only to the judge for

11

whom they work" are personally accountable to the judge. Laurie v. Ala. Ct. of Crim. App., 88 F. Supp. 2d 1334, 1348 (M.D. Ala. 2000), aff'd, 256 F.3d 1266 (11th Cir. 2001) (holding that staff attorneys, along with law clerks and the elected judges for whom they are employed, are excluded from the statutory definition of "employee" under Title VII).[6]

In this case, like the secretary in Bland and the staff attorneys in Laurie, Plaintiff was personally accountable to Judge Butchart. Plaintiff was interviewed by and received an offer of employment to work exclusively for Judge Butchart. Plaintiff was hired to perform legal research and write judicial opinions, and otherwise assist the judge in chambers and in the courtroom. These sensitive and confidential job duties demonstrate that Plaintiff had a high level of personal accountability to Judge Butchart. Furthermore, Plaintiff's accountability to Judge Butchart for her substantive work was not reduced by Defendant's handling of ministerial activities, such as signing Plaintiff's paychecks, issuing her employee identification card, and disseminating the human resources policies.

Third, as a law clerk, Plaintiff represented Judge Butchart in the eyes of the public.

---

[6] The duties, not the title, of the position at issue are dispositive. The duties of the "staff attorneys" in Laurie are similar to the responsibilities of the "law clerk" position as alleged in Plaintiff's complaint. By contrast, in Marafino v. St. Louis Cnty. Cir. Ct., 537 F. Supp. 206, 211 (E.D. Mo. 1982), aff'd 707 F.2d 1005 (8th Cir. 1983), the court held that a "staff attorney" on the Juvenile Court, headed by an elected Circuit Court Judge, did not meet the "personal staff" exemption, where she worked in the legal department, was supervised by the legal department director, did not have a sensitive and intimate working relationship with the judge, did not have a high level of personal accountability to the judge, and was subject to hiring and firing by the Circuit Court en banc. Id. at 211. In Gearhart v. Oregon, 410 F. Supp. 597 (D. Or. 1976), a legislative aide described as "more than 'just a law clerk'" was found not to be personal staff. Id. at 599-601 (holding that the "immediate adviser" exemption did not apply to a deputy legislative counsel who worked for numerous legislators, and whose duties included "bill drafting, research and other allied chores [that] were not of the sort that necessitate sensitive and intimate relationships").

In Bland, the court held that "by answering [the judge]'s phone and attending his chambers," the judge's secretary represented her employer in the eyes of the public. Bland, 263 F. Supp. 2d at 540. Similarly, in Laurie, the court found that staff attorneys may represent their judges in the eyes of the public, including when they conduct interviews to hire law clerks on behalf of their judges. Laurie, 88 F. Supp. 2d at 1348. Here, Judge Butchart told Plaintiff at the interview that she was expected to answer phone calls for Judge Butchart and to assist in the courtroom. Moreover, Judge Butchart's former law clerk, Dufrayne, represented the judge when she participated in Plaintiff's job interview and contacted Plaintiff to extend the offer of employment. Plaintiff reasonably could have expected to play a similar role when Judge Butchart hired her successor.

Fourth, Judge Butchart exercised a considerable amount of control over Plaintiff's position as a law clerk. Judge Butchart interviewed Plaintiff, made the decision to hire Plaintiff, and was Plaintiff's sole supervisor. See Bland, 263 F. Supp. 2d at 540 (finding that the judge exercised "complete control" over the plaintiff's position as secretary because she "was wholly and solely responsible to [the judge] in the performance of her job duties"). Moreover, Plaintiff's job duties, such as performing legal research and writing judicial opinions, were directly on behalf of the judge.

Fifth, Plaintiff was only one level removed from Judge Butchart in the chain of command. See Taplin v. Johnson, 90 F. App'x 736, 740 (5th Cir. 2004) (nonprecedential) (finding that office administrator who "was only one step removed from the Sheriff in the command structure, and [who] often reported directly to the Sheriff," was personal staff); Bland, 263 F. Supp. 2d at 540 (finding that secretary who "was personally supervised by [the judge]

13

without any intermediaries" was personal staff). Here, Plaintiff was supervised by and reported directly to Judge Butchart. Thus, the first five <u>Teneyuca</u> factors weigh in favor of finding that Plaintiff satisfied the "personal staff" exemption to the Title VII definition of an employee.

The sixth factor, and the focus of discussion at oral argument, is "the actual intimacy of the working relationship between the elected official and the person filling the position." <u>Teneyuca</u>, 767 F.2d at 151. The thrust of Plaintiff's affidavit and argument is that she did not develop a close personal working relationship with Judge Butchart during the three weeks of her employment, from March 5, 2009 to March 26, 2009. Plaintiff contends that she could not have had an intimate working relationship with Judge Butchart because they met infrequently, they rarely discussed cases, and Plaintiff did not draft any opinions.

At oral argument, the Court inquired whether it was material that Plaintiff did not draft any opinions during her brief employment, if Plaintiff was essentially "on call" to draft opinions as Judge Butchart needed. Plaintiff argued that the Court should consider only what transpired in Plaintiff's relationship with Judge Butchart, not the presumed relationship between the parties based on the expected duties of the law clerk position. Plaintiff contended that discovery is needed from Judge Butchart to obtain facts about what Plaintiff did during her brief tenure. Defendant argued that discovery is unnecessary to resolve the case on summary judgment, because the relevant inquiry is not what actual work Plaintiff accomplished, but rather what are the functions of the law clerk position.

The Court agrees with Defendant that the correct inquiry for the "intimacy of the working relationship" factor is into the nature of the position held by Plaintiff. As the Court noted at oral argument, it would be highly intrusive to inquire into the specific facts of the confidential

relationship between a law clerk and a judge each time a law clerk sues for wrongful termination. Under Plaintiff's theory, the Court would have to probe the intimacy of the relationship by asking personal questions such as how often the judge seeks the law clerk's assistance, how much the judge trusts the law clerk's legal research and writing abilities, whether the law clerk is punctual, how much time the judge spends in chambers, and whether the judge prefers to meet with law clerks regularly or sporadically.

In the first place, there is no language in the statute, or legislative history, which allows for any Congressional intent to permit such an inquiry. Second, as a matter of policy, a judicial inquiry into the judge/law clerk relationship is an unnecessary intrusion into what is best described as a confidential relationship. A law clerk's Title VII status properly turns on the nature of the job, not the personalities, abilities, and preferences of the individual judge and law clerk.

Furthermore, the Court does not accept Plaintiff's contention that the length of time for which Plaintiff held her position prior to her termination is relevant to determining whether she was "personal staff." According to this theory, a law clerk could begin her job as an "employee" covered by Title VII, and later become exempt "personal staff" after developing a sufficiently close working relationship with the judge. Courts would have to determine after how many days, weeks, or months of employment the working relationship reached the intimacy threshold. This type of invasive analysis is not consistent with Congressional intent. Indeed, in the leading case, Teneyuca, in which the plaintiff alleged that she was not hired for the position of assistant county criminal district attorney due to sex discrimination (and therefore served zero days in the position), the Fifth Circuit did not evaluate whether the plaintiff and the district attorney

15

themselves had an intimate working relationship. Rather, the court discussed the policy rationale for the personal staff exemption in terms of the relationship between the positions at issue, not the persons holding them: "'Congress intended for the personal staff exception to apply only to those individuals who are in highly intimate and sensitive positions of responsibility on the staff of the elected official.'" Teneyuca, 767 F.2d at 152 (quoting Owens, 654 F.2d at 1375). In this case, Plaintiff's position as a law clerk on Judge Butchart's staff, tasked with researching and drafting judicial opinions and assisting the judge in the courtroom, required the utmost confidentiality and sensitivity.

Because there is no genuine dispute of material fact, Plaintiff cannot carry her burden to show that she was a covered employee under Title VII rather than exempted personal staff to an elected official. Accordingly, Plaintiff is excluded from the protections of Title VII, and judgment as a matter of law for Defendant is appropriate.

In closing, the Court notes that this is a highly sensitive issue and is concerned about Plaintiff's predicament. As the Court recognized at oral argument, an employee in private industry who was terminated after disclosing her pregnancy to her employer would have recourse to bring a Title VII sex discrimination claim against her employer. The policy question of whether a law clerk for a Judge should fall in the same category of "personal staff" along with certain aides to elected executive and legislative leaders is outside the purview of this Court.

## VI. Conclusion

Based on the foregoing reasons, Defendant's Motion to Dismiss And/Or For Summary Judgment As To Plaintiff's Complaint is denied with respect to the motion to dismiss, and is

granted with respect to summary judgment.

O:\CIVIL 09-10\10-4418 Gupta v. First Judicial District Pa\Gupta MTD-MSJ.wpd

17